## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PETER DENNIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01012-JES-JEH |
| | ) | |
| WAYPOINT RESOURCE GROUP, LLC | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendant Waypoint Resource Group, LLC's

Motion for Summary Judgment (Doc. 12[1]). Plaintiff Peter Dennin filed a Response (Doc. 14) to

Defendant's Motion and Defendant filed a Reply (Doc. 15). For the reasons set forth below,

Defendant Waypoint Resource Group's Motion (Doc. 12) is GRANTED.

### BACKGROUND

Plaintiff Peter Dennin ("Dennin") filed this action against Defendant Waypoint Resource

Group, LLC ("Waypoint")[2] on January 14, 2019. Doc. 1. Waypoint is a debt collection agency in

Texas. This case stems from communications between Dennin and Waypoint following Dennin's

observation of a past due account furnished by Waypoint on his credit report. Dennin is seeking

damages for two counts: one which alleges several violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692g *et seq.*, and one which alleges a violation of the

Illinois Collection Agency Act, 225 ILCS 425/1, *et seq.* Doc. 1, at 3-4. Dennin alleges Waypoint

---

[1] Citations to the Docket in this case are abbreviated as "Doc. __."
[2] There are other named "Doe" defendants in the Complaint. However, those defendants have never been served so the Court refers to Waypoint as the sole defendant in this opinion.

violated the following provisions of the FDCPA: §§ 1692d, 1692e, 1692e(10), 1692f, and 1692g(a)(1). *Id.* Waypoint now moves for summary judgment on all claims in the Complaint. Doc. 12. In his Response, Dennin argues summary judgment should be denied on his FDCPA claims under §§ 1692e(10) and 1692g(a). Doc. 14, at 13.

The following facts are undisputed by the parties. In 2015, Dennin was living in St. Petersburg, Florida and subscribed to cable services from Bright House Networks ("Bright House"), subsequently acquired by Charter Communications, Inc. ("Charter"). Doc. 12, at 4. Dennin cancelled his services with Bright House when he moved out of his St. Petersburg apartment in August 2015. *Id.* at 5. Dennin allegedly returned his Bright House equipment to a retail location, and, at the same time, paid what he owed in cash. *Id.* Dennin did not retain the receipt reflecting this payment. *Id.*

In February 2018, Charter placed an account with Waypoint in Dennin's name that showed an unpaid balance of $97.60. *Id.* Dennin became aware Waypoint was reporting the Charter account on Dennin's credit report in late-September 2018. *Id.* at 6. In response, Dennin made two phone calls to Waypoint. On September 22, 2018 Dennin called Waypoint and spoke with two agents regarding the past due account. *Id.* Dennin said he paid his Bright House bill and he wanted the account off his credit report. *Id.* At the beginning of the call, Dennin stated he was currently living in Peoria, Illinois. Doc. 14-2. When he was transferred to speak to a supervisor, Dennin recited his understanding of the Fair Trade Commission requirements and his research regarding credit disputes. Doc. 12, at 6. Dennin claimed he was going to law school, articulated what he understood were his dispute rights, and offered to pay the $97.60 balance to get the account removed from his credit report. *Id.* Following this conversation, Waypoint mailed a letter

2

to Dennin at the Florida address, advising him that the balance had been placed with Waypoint and he had 30 days to dispute the balance. *Id.* at 7.

Four days later, on September 26, 2018, Dennin called Waypoint again. *Id*. Dennin admits he disputed the debt during this call. *Id.* Dennin did not speak with any other Waypoint agents after the call on September 26, 2018. *Id.* at 8. On October 4, 2018, Waypoint updated its reporting to the credit reporting agencies to reflect that Dennin disputed the Charter account. *Id.* at 7. Waypoint sent a letter to Dennin to his Peoria, Illinois address on October 5, 2018, acknowledging receipt of his dispute under the Fair Credit Reporting Act. *Id.* at 8.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or

3

merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

DISCUSSION

In his Response, Dennin does not address the remaining four claims, which allege violations of 15 U.S.C. §§ 1692d, 1692e, and 1692f of the FDCPA and the state law claim. Doc. 14. As such, Waypoint's Motion is granted for the four claims Dennin chose not to defend. *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding claims not addressed in a summary judgment opposition brief are deemed abandoned). The remaining claims under §§ 1692e(10) and 1692g(a) will be discussed in turn.

**1. Plaintiff's Section 1692e(10) Claim Against Waypoint**

The FDCPA is designed to prevent abusive behavior from debt collectors – none of which occurred here. *See* 15 U.S.C. § 1692e. This is not the case where Waypoint was incessantly calling Dennin. To the contrary, if anything, Waypoint reportedly tried calling him twice, he did not answer. Doc. 12-5, at 28:2-28:4. And so, it reported the debt to credit bureaus, which finally got his attention. Section 1692e generally forbids the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute then provides a non-exhaustive list of conduct which violates this section, including § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* at

§ 1692e(10). Section 1692e applies even when a false representation was unintentional. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). Dennin's claim under 1692e(10) centers on the two occasions he spoke with Waypoint in September 2018.

Waypoint argues summary judgment is proper for this claim because it suffers "a fundamental flaw." Doc. 12, at 13. Waypoint submits that the sole allegation in the Complaint to support this claim is, "Waypoint stated that Plaintiff could not dispute the Debt." *Id.* (citing Doc. 1, at 2, ¶13). Waypoint argues the record evidence does not establish that such a statement was made or that Dennin was prevented from lodging a dispute. *Id.* It is also Waypoint's position that "[t]he record is devoid of any evidence that Plaintiff was confused as to his ability to dispute the debt; in fact, he did exactly that." *Id.* at 16. After reviewing the audio recordings submitted to this Court by Dennin with his Response, the Court agrees with Waypoint. *See* Docs. 14-2, 14-3.

A.   *Dennin's Theory in his Complaint*

In its Reply, Waypoint accuses Dennin of attempting to rewrite his Complaint through his Response to the Motion. Doc. 15, at 4. Waypoint points out that the Complaint alleges "Waypoint stated that Plaintiff could not dispute the debt," while Dennin's Response alleges that the false and misleading representation was when the Waypoint agent told Dennin he "could not both dispute the debt and also pay it." *Id.* Waypoint also contends Dennin can only succeed on his § 1692e claim if he demonstrates that the statement would confuse an unsophisticated consumer, and that the statement is material. Doc. 12, at 14. This argument can apply to either of Dennin's theories.

It has long been established that a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th

Cir. 1996)); *see also Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 806 (7th Cir. 2011) (upholding

the district court's rejection of a new theory of discrimination raised for the first time in

opposition to summary judgment); *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1314 n.11 (7th Cir.

1987) (upholding the district court's rejection of a theory raised for the first time in opposition to

summary judgment because the "complaint failed to give fair warning of the theory" to the

opposing party). Here, the Complaint alleges the following:

> 12. On or about September 22, 2018, Plaintiff called Waypoint after seeing the Debt on his credit report.
> 13. Waypoint stated that Plaintiff could not dispute the Debt.
> 14. Waypoint's material misrepresentation about Plaintiff's right to dispute the Debt with Waypoint and the credit bureaus caused Plaintiff a significant amount of confusion.
> 15. Waypoint refused to send Plaintiff a letter validating the Debt to his current address after being informed the address they had on file was incorrect.

Doc. 1, at 2. Under Count I for Violations of the FDCPA, it states "Defendants' conduct violated

15 U.S.C. § 1692e(10) in that Defendants employed false and deceptive means to collect a debt."

*Id.* at 3.

Dennin's Response raises a new theory about Waypoint's alleged violation of §

1692e(10): "[D]uring its September 26, 208 [*sic*] telephone conversation with Plaintiff, it did not

simply advise Plaintiff that he could not dispute the debt; rather its agent stated that Plaintiff

could not both dispute the debt and also pay it … These representations were materially false and

misleading." Doc. 14, at 6. There is a marked difference in claiming that a defendant told the

plaintiff he could not do something compared to claiming a defendant told the plaintiff he could

only do one thing or the other, but not both. Nor could a reasonable inference have been drawn

that Dennin's new allegations could be included based on his Complaint. Dennin's Complaint did

not give Waypoint fair warning of this theory, causing Waypoint to address it for the first time in

its Reply. While a complaint need not provide all information to support a claim, it must still

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

If the Court disregards Dennin's new theory of this claim and looks only to the allegations in the Complaint, there is no genuine issue of material fact and summary judgment must be granted on this claim. Even when viewing the record in a light most favorable to Dennin, it does not support the allegation that on or about September 22, 2018 "Waypoint stated that Plaintiff could not dispute the debt." On the recording of the September 22 call, Dennin tells the Waypoint agent, "I'm disputing this, and I want it removed from my bureau until this can be resolved because right now it's impacting my credit." Doc. 14-2, at 4:45-4:53. The agent responds, "Okay sir, we can't remove it from the bureau at this time, but I can file a dispute." *Id.* at 4:55-4:58. When Dennin is transferred to a supervisor, he again states he is disputing the debt. *Id.* at 10:21. After some back and forth between Dennin and the supervisor, the supervisor states, "We can dispute the balance; however, once that dispute is in place, that does not actually prevent it from being reported to the credit bureau. And if it is reported already through the credit bureau, we're not able to actually remove it, even if you were to actually pay the balance." *Id.* at 12:12-12:26. The recording plainly contradicts Dennin's assertion in his Complaint that a Waypoint agent told Dennin he could not dispute the debt.

Turning to the call on September 26, there is again no evidence that Waypoint told Dennin he could not dispute the debt; although, Waypoint does clearly tell Dennin he cannot both dispute the debt *and* pay the balance with them. On the recording of the second call, Dennin first describes his initial communication with Waypoint and claims he was not allowed to file a dispute: "I called on Saturday to dispute it and the person that I spoke to … refused to accept my dispute. She said the debt's valid. She wouldn't accept my dispute[.]" Doc. 14-3, at 7:36-7:49.

Dennin's statements in second call plainly contradict his discussion with the Waypoint agents in the first call based on the recording provided to the Court.

Throughout the second call, Dennin mentions he will pay the debt, even though he contests its validity, because he wants it removed from his credit report. About 20 minutes into the call, Dennin reasserts his desire to dispute the debt: "I'm formally disputing that this debt is not legitimate … so I'm disputing this $97.60. So, can you file a dispute for me?" *Id.* at 20:12-20:30. The Waypoint agent tells Dennin, "I can absolutely file a dispute for you. That's not a problem at all." *Id.* at 20:53-21:02. Thus, in viewing the record, Dennin's own evidence submitted to this Court defeats his claim under § 1692e(10). Waypoint did not state Dennin could not dispute the debt, which he did in fact end up disputing. It is unnecessary to analyze whether such a statement was false and misleading because the evidence does not show that it happened.

    B. *Dennin's New Theory in his Response*

Dennin's new argument centers on the latter part of the September 26 phone call. After the agent purportedly submits the dispute, Dennin again states he wants to pay the balance because he needs it off his credit report. *Id.* at 21:59-22:33. The agent responds, "I'm confused now. You want to file a dispute or you wanna go ahead and pay it? Because you can't do both 'cause you payin' it says that it's a valid debt. You filin' a dispute [is] sayin' it's not a valid debt." *Id.* at 22:33-22:53. Dennin reiterates that his ultimate goal is to have this debt removed from his credit report. *Id.* at 22:53-25:10; 26:06-27:08. The agent explains that due to "strict policies and regulations" the debt would be considered valid if he pays the balance and the credit reporting agencies will be updated accordingly; however, "[w]e will update it; we will not remove it. The only time they remove anything from credit bureaus is if it's incorrect information because again, Waypoint reports accurately." *Id.* at 27:10-27:58. Despite the evidence that Waypoint told Dennin

he could not both dispute the debt and pay the balance, Dennin has not met his burden of demonstrating a genuine dispute of material fact exists as to whether the statements by the Waypoint agent were false and misleading.

In his Response, Dennin argues a Waypoint agent made materially false and misleading statements on the September 26 call. Doc. 14, at 6. Dennin argues the "unsophisticated consumer" would believe the agent's statement that a consumer could not both pay and dispute the debt, and that paying the debt constituted an admission of its validity. *Id.* at 8. Dennin contends there was a third option, in which he could have paid Waypoint the amount allegedly owed, and Waypoint would report to the credit bureaus that the account had a zero balance. *Id.* at 5-6. Waypoint would then return the account to Charter, and Dennin could dispute the debt with Charter. *Id.* By failing to advise Dennin of this third option, Dennin argues he was deprived of "his opportunity to choose his course of action intelligently." *Id.* at 9.

As Dennin stated in his brief, "[t]he Act protects the unsophisticated debtor, but not the irrational one." Doc. 14, at 7 (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1062 (7th Cir. 2000)). "[C]onfusion is not in the eyes of the beholder." *Pettit,* 211 F.3d at 1062. The plaintiff has the burden of proving that a statement was misleading. *Muha v. Encore Receivable Management, Inc*., 558 F.3d 623, 628 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). Here, Dennin cites only to the recording of the September 26 call and the deposition of David Schieszer ("Schieszer"), Waypoint's designee under Federal Rule of Civil Procedure 30(b)(6), as proof of Waypoint's "materially false and misleading" statements. Doc. 12-5. When Schieszer is asked whether the agent was correct in stating that Dennin could not both pay the debt and dispute it,

he responded, "That – I don't know that I have a legal clarity on that. They seem to conflict with each other." Doc. 12-5, at 35:3-35:10. Schieszer goes on to explain that Waypoint does not have a process for disputing a debt that has been paid in full. *Id.* at 36:14-37:1. After a debt is paid in full, Schieszer explained Waypoint would update the consumer credit bureaus to reflect the payment and the account would be returned to the creditor. *Id.* at 37:2-37:17. He added, "the debtor could take any number of steps" with the creditor, including filing a formal dispute that could result in "either a refund or a validation of his dispute, which they would have then contacted us to make some changes." *Id.* Schieszer stated that he did not believe the Waypoint agent misrepresented Dennin's rights to dispute the debt. *Id.* at 37:25-38:2.

Dennin argues that "nothing in the FDCPA or any other law provides that a consumer cannot both pay a debt and dispute its validity, nor that paying a disputed debt constitutes an admission of its validity." Doc. 14, at 7. While the Court does not take a position on the accuracy of Dennin's argument of whether a consumer can do both, it still does not establish that Waypoint said anything false or misleading in the calls with Dennin. Contrary to Dennin's argument, it does not matter what could hypothetically be in the FDCPA or whether the FDCPA does not discuss that a consumer cannot both pay a debt and dispute its validity. The actual content of the FDCPA matters and whether the debt collector made a false and misleading statement in attempting to collect a debt. Further, Dennin has not established a requirement that Waypoint must inform consumers of what options the consumer may take with the original creditor.

From Waypoint's standpoint, the consumer has two options: to pay the balance or file a dispute with Waypoint. As Schieszer testified, the consumer could file a dispute with Waypoint and there are processes in place for disputing a debt; however, Waypoint does not have any

10

process to dispute a debt that has been paid in full. Doc. 12-5, at 36:14-37:1. Once the balance is

paid in full, the account is returned to the original creditor and the consumer "could take any

number of steps," including filing a formal dispute with the creditor. Dennin has not established

that a debt collector has an obligation to inform consumers what their options are after a balance

is paid and after the debt collector is no longer involved, which may include, for example,

disputing the debt with the original creditor, filing a civil action, or simply abandoning the issue.

Dennin's argument against summary judgment boils down to whether Dennin was materially

misled or deceived when the Waypoint agents did not inform him of his options after the balance

was paid in full. In other words, was it a misleading or deceptive statement by the Waypoint

agent because it did not clarify that Dennin could only do one or the other *with Waypoint*, but he

might have other options to dispute the debt that do not involve the debt collector?

Courts in this Circuit have grouped suits alleging deceptive or misleading statements

under the FDCPA into three distinct categories:

> In the first category are cases involving statements that plainly, on their face, are
> not misleading or deceptive. In these cases, we do not look to extrinsic evidence to
> determine whether consumers were confused. Instead, we grant dismissal or
> summary judgment in favor of the defendant based on our own determination that
> the statement complied with the law….
>
> The second category of cases involves statements that are not plainly misleading or
> deceptive but might possibly mislead or deceive the unsophisticated consumer. In
> these cases, we have held that plaintiffs may prevail only by producing extrinsic
> evidence, such as consumer surveys, to prove that unsophisticated consumers do in
> fact find the challenged statements misleading or deceptive….
>
> Cases involving plainly deceptive communications fall into a third category, one
> where we will grant summary judgment for the plaintiffs without requiring them to
> prove what is already clear. As we explained in *McKinney*, "in some situations ... a
> debt collector's letter may be so clearly confusing on its face that a court may award
> summary judgment to the plaintiff on that basis."

*Ruth*, 577 F.3d at 800–801.

Based on the discussion above, Waypoint's statements were not deceptive or misleading. Here, if the statements are evaluated under the first category, Dennin's new theory of the § 1692e(10) claim fails because he has not established debt collectors have any statutory obligation to inform consumers of their options after the debt collector is no longer involved. As such, the statements "on their face" are not misleading or deceptive. This new theory of the claim also fails if the statements are evaluated under the second category. Dennin has not presented any extrinsic evidence that shows unsophisticated consumers would find the agents' statements or omissions misleading or deceptive. Therefore, he has not created a genuine issue of material fact as to whether a significant portion of the population would be confused. *See Durkin v. Equifax Check Services*, *Inc.*, 406 F.3d 410, 419 (7th Cir. 2005). Finally, the Waypoint agents' statements do not fall within the third category as there is nothing clearly confusing "on its face" when the agent said Dennin could choose to either dispute the debt or pay the balance. These were indeed his two options with Waypoint. Moreover, "mere claim[s] of confusion" or "anecdotal proclamations of being confused" are not enough for a FDCPA plaintiff to survive a defendant's motion for summary judgment. *Durkin*, 406 F.3d at 415. For these reasons, Waypoint's Motion is granted as to the § 1692e(10) claim.

## 2. Plaintiff's Section 1692g Claim Against Waypoint

After an initial communication between a consumer and debt collector about the collection of any debt, the FDCPA requires that the debt collector send the consumer a written notice within five days. 15 U.S.C. § 1692g(a). The notice must include certain information related to the debt. *Id.* In his Complaint, Dennin claims Waypoint violated § 1692g(a) when it "failed to send Plaintiff a validation notice stating the amount of the Debt." Doc. 1, at 3. Dennin merely focuses on the fact that Waypoint sent the notice to Dennin's former Florida address rather than his new Peoria, Illinois address. He does not claim that Waypoint failed to stop the

debt collection process for 30 days after he disputed the debt or that Waypoint failed to provide any other information required under § 1692g.

The September 22, 2018 call was the initial communication between Dennin and Waypoint that triggered Waypoint's statutory obligation to send Dennin written notice of his rights to dispute and to request verification of the debt. Doc. 14, at 10. Dennin argues Waypoint violated § 1692g(a) by failing to send the notice to a "valid and proper address where [Plaintiff] may actually receive it." *Id.* at 11 (quoting *Ponce v. BCA Fin. Servs., Inc.*, 467 F. App'x 806, 807–08 (11th Cir. 2012)). Dennin claims Waypoint sent the notice to his former Florida address, despite Dennin informing Waypoint agents on the September 22 call that he had moved to Illinois. *Id.* Dennin contends this put him at risk of waiving his statutory rights, specifically his right to have Waypoint verify the debt and to have Waypoint cease its collection efforts until the debt was verified. *Id.* at 12.

To be clear, Dennin briefly provided his Peoria address once, at the beginning of the first call, when Waypoint asked him to verify the account using a mailing address. Doc. 14-2, 0:50 – 1:00. Waypoint told Dennin that it did not have that address on file, so it asked him for the city, state, and zip code of the address it did have on file. Doc. 14-2. After the Court's review of the recordings, there appears to be a real possibility that Waypoint did not obtain Dennin's updated address because he abruptly ended the call. In his deposition, Schieszer confirmed that Waypoint sent the notice to the Florida address because it was not able to get his new address in the September 22 call. Doc. 12-5, at 26:14-26:16. Where Dennin briefly gave his Peoria address, Waypoint was not concerned with updating his address but rather attempting to verify the debt with Dennin by confirming the address it had on file. Dennin confirmed he previously lived at the Florida address.

Both parties addressed Article III standing in their briefs, so the Court will address these arguments. The Court need not decide whether Waypoint violated § 1692g(a) because based on these facts, Dennin has not established any concrete injury as a result of Waypoint sending the notice to the wrong address. Therefore, he lacks Article III standing to bring this § 1692g(a) claim.

In its Motion, Waypoint argues summary judgment is appropriate because Dennin lacks Article III standing. Doc. 12, at 20. It argues Dennin only alleged a procedural violation of the FDCPA and has not alleged any concrete injury to him resulting from this violation. *Id.* "A procedural violation alone does not constitute an intangible harm that satisfies the injury-in-fact requirement." *Id.* at 20 (quoting *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945 (S.D. Iowa 2016)). Waypoint contends Dennin cannot show actual harm resulting from its failure to send the validation letter to Dennin's new address because the letter was effectively unnecessary: Dennin lodged his dispute of the debt a few days later, despite not having received the validation letter. *Id.* at 21. Waypoint further reiterates its position on Article III standing in its Reply. Doc. 15, at 7.

To establish Article III standing, a plaintiff must allege he has suffered an injury in fact traceable to the defendant's conduct and redressable by a favorable judicial decision. *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). While the alleged harm need not be tangible to be "concrete," it must be "real and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal citation and quotations omitted). To support a claim under a statutory violation, here § 1692g(a), the plaintiff must have Article III standing. *See Casillas*, 926

F.3d at 333. "[Dennin] cannot demonstrate standing simply by pointing to [Waypoint]'s procedural violation. [Dennin] must show that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id.* (quoting *Groshek v. Time Warner Cable, Inc*., 865 F.3d 884 (7th Cir. 2017) (internal quotations omitted). Similar to *Casillas*, the portion of the FDCPA Dennin points to "protect[s] a consumer's interest in *knowing* her statutory rights." *Casillas*, 926 F.3d at 334-35 (noting the FCRA protects a consumer's interest in an opportunity to "receive and review substantive information[,]" which is a different harm than a failure to give a consumer notice of statutory rights) (emphasis added).

In Dennin's initial phone call on September 22, he expressed how he already knew about the FDCPA and that Waypoint must give him 30 days to dispute a debt. In the second call, Dennin expressed how he already had spoken to an attorney and was in the process retaining one if Waypoint would not remove the debt from his bureau. Similar to the Seventh Circuit's finding in *Casillas*, nothing would have changed for Dennin had the original notice been mailed to the Peoria address. *See* 926 F.3d at 335. Dennin does not claim that he lost the ability to dispute the debt or he suffered any other harm due to the failure to send the original notice to his Peoria address. Rather, it is an undisputed fact that on October 4, 2018, Waypoint updated its reporting to the credit reporting agencies to reflect that Dennin disputed the account. Doc. 12, at 7. Then, Waypoint sent a letter to Dennin to his Peoria, Illinois address on October 5, 2018, acknowledging receipt of his dispute and its commitment to pause collection efforts while it attempts to resolve the dispute. Doc. 12-9. Dennin does not claim Waypoint failed to do either.

In his Response, Dennin argues that his rights were violated under § 1692g because Waypoint did not send the written notice to his Peoria address, so he was at risk of waiving his statutory rights. Doc. 14, at 12. Dennin relies on *Casillas*, 926 F.3d at 329, to support his claim

15

that Waypoint violated § 1692g(a). Doc. 14, at 11-13. In *Casillas*, the plaintiff alleged the defendant, a debt collector, violated the FDCPA when it sent a collection letter to the plaintiff. 926 F.3d at 331. The plaintiff claimed the collection letter violated § 1692g(a) because it did not specify that the consumer was required to communicate *in writing* to trigger certain statutory provisions. *Id.* (emphasis added). The plaintiff in *Casillas* never alleged any injury from the omission of the information, nor did the plaintiff attempt to dispute the debt or verify the creditor. *Id.* The Seventh Circuit Court of Appeals held that a plaintiff cannot simply point to a procedural violation of the FDCPA to demonstrate Article III standing. *Id.* at 332. Instead, the plaintiff must show the violation harmed or "presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." *Id.* at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)). *See also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). Moreover, the Seventh Circuit emphasized, "[i]t is not enough that the omission risked harming *someone*—it must have risked harm to the *plaintiff*[]." *Id.* at 336 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) for the proposition that a party seeking relief must be injured himself).

The *Casillas* court held the plaintiff lacked standing because she alleged nothing more than a bare procedural violation of the FDCPA. *Id.* at 339. The Seventh Circuit warned, and Dennin emphasizes, that although the plaintiff had not been harmed, an omission such as that in *Casillas* would put those consumers who sought to dispute the debt at risk of waiving statutory rights. Doc. 14, at 12. Here, Dennin's claim is factually different than the plaintiff's in *Casillas*, but the result is the same: "[Dennin] caught the defendant in a mistake, but it was not one that hurt [him]." 926 F.3d at 339. Dennin was not at risk of waiving his statutory rights. Dennin has not demonstrated he suffered an injury that was "concrete and particularized" and "actual or

imminent" when Waypoint mailed the notice to his former address in Florida. In the first call, Dennin told the agent that Waypoint had to give him 30 days to dispute the debt from the initial conversation. Doc. 14-2, 5:03-5:18. Then he told the agent if Waypoint will not remove it from Dennin's bureau then he is going to hire an attorney on Monday. Doc. 14-2 16:08-6:12. In essence, Dennin attempted to convince the Waypoint agents to disregard Waypoint's own policies and automatically extinguish his debt that he allegedly did not owe. Otherwise, he would contact an attorney. Waypoint declined to indulge Dennin and instead, it ultimately filed a dispute for him.

At some point after the September 22 call, Dennin exercised his statutory rights to dispute the debt, despite not having received the notice mailed to Florida, because on October 5, 2018, Waypoint mailed Dennin a letter to his Peoria address acknowledging receipt of his "letter of dispute." Doc. 12-9, at 1. Dennin also claims to have sent a letter by U.S. mail to Waypoint disputing the accuracy of the balance due on his account. Doc. 12-4, at 5. Additionally, Dennin testified he had retained counsel for a similar case involving debt collection that preceded his communications with Waypoint. Doc. 12-3, at 6-7. The fact that Dennin had counsel around the time he was communicating with Waypoint is contrary to Dennin's assertion that *he* was at risk of waiving his statutory rights, not a theoretical plaintiff. On these facts, Dennin was not at risk. At that time, he already knew that he was going to dispute the debt – he stated he was exercising his rights and he did in fact do so. Thus, he was not at risk of losing them, nor does he allege that he lost the right to have Waypoint verify the debt or cease collection efforts. While a violation under 1692g(a) could give rise to a concrete injury, on the facts here, this plaintiff has not shown an injury-in-fact for Article III standing.

Finally, in his Response, Dennin relies on a case from the Northern District of Ohio for the proposition, "[i]f the debt collector knows the validation notice was sent to the wrong address, the debt collector has not complied with plain language of the statute." Doc 14, at 10 (citing *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2006 WL 2473004, at *12 (N.D. Ohio Aug. 24, 2006)). Notably, the crux of Dennin' § 1692g claim is not based on the statutory language, but rather judicial interpretation from other circuits regarding whether the notice was sent to a "valid and proper address." *See* Doc. 14, at 10, 12 (citing *Ponce v. BCA Fin. Servs., Inc.*, 467 F. App'x 806, 807–08 (11th Cir. 2012); *Johnson*, 2006 WL 2473004, at *12). *See also Glynn v. Midland Funding, LLC*, No. 2:16-CV-02678-ODW-SK, 2018 WL 2021360, at *5 (C.D. Cal. Apr. 27, 2018) (noting courts have interpreted the § 1692(a) "to consumer" language requires debt collectors to send the notice letter to a consumer's valid and proper address). However, these cases typically involve situations where the debtor failed to dispute the debt within the 30 day-window, the parties disagree as to the initial communication date, or the debtor failed to verify the debt after the debtor disputed it. Further, caselaw from this circuit regarding the validity of a consumer's address is sparse. *See Decker v. Receivables Performance Mgmt., LLC*, No. 17 CV 4152, 2019 WL 1112256, at *7 (N.D. Ill. Mar. 11, 2019) (granting summary judgment on a § 1692g claim based on the premise that plaintiff must show the notice was not sent because the FDCPA does not require receipt); *Jones v. Enhanced Recovery Co.*, No. 417CV00234RLYDML, 2019 WL 4451387, at *5 (S.D. Ind. Sept. 17, 2019) (finding no reasonable jury could find the debt collector violated § 1692g where the consumer previously resided at the mailing address then became homeless for at least two years; a third-party attempted to find the consumer's contact information; and no evidence showed the mail was returned undeliverable).

18

While a debt collector cannot simply send the notice to any address to comply with § 1692g, it was not unreasonable for Waypoint to have sent the notice the Florida address. Rather, it is unreasonable to expect a debt collector to update a consumer's address before the identity of the consumer has been confirmed. In Dennin's first call to Waypoint, he admitted that he lived at the Florida address, which matched the information Waypoint had. Dennin only briefly recited his Peoria address at the beginning of the first call in response to the agent's explicit request for Dennin's address "for security purposes." Doc. 14-2, at 0:50-1:04. More importantly, Dennin abruptly ended the call without providing an updated address. Even if Waypoint is considered to have knowingly sent the notification to the wrong address or to have violated § 1692g, it would not defeat the requirements of Article III standing. As the *Casillas* court succinctly stated, "no harm, no foul." 926 F.3d at 331. For these reasons, Waypoint's Motion is granted as to Dennin's § 1692g(a) claim.

### CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 12) for Summary Judgment is GRANTED. This matter is now terminated.

Signed on this 22nd day of October, 2020.

s/James E. Shadid
James E. Shadid
United States District Judge

19